UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**ORIGINAL**

- - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                 :

                  - v. -                 :     **SUPERSEDING INDICTMENT**

MICHAEL BARNETT,                         :     S1 15 Cr. 17 (KMK)
ROBERT LEES, and
KEVIN DICELLO,                           :

                  Defendants.            :

- - - - - - - - - - - - - - - - - - - x

## COUNT ONE

(Conspiracy)

The Grand Jury charges:

### BACKGROUND

1.   At all times relevant to this Indictment:

#### The Defendants

a.   MICHAEL BARNETT, the defendant, was the developer
of Vineyard Commons, a senior housing community in Ulster
County.  BARNETT also planned and helped to develop two
additional residential projects in Ulster County and Orange
County.  BARNETT lived and worked primarily in Dutchess County,
New York.

b.   ROBERT LEES, the defendant, was the president of
a division of a building and lumber supply company (together
with its subsidiaries and affiliates, the "Lumber Company").
The Lumber Company's securities were registered with the United

States Securities & Exchange Commission pursuant to Section 12(g) of the Securities Exchange Act of 1934.  The Lumber Company's common stock was traded on the NASDAQ Stock Market, which is a national securities exchange registered with the SEC pursuant to Section 6 of the Securities Exchange Act of 1934.

     c.   KEVIN DICELLO, the defendant, was a vice president of operations of the Lumber Company.

### The Financing and Development of Vineyard Commons

     d.   The United States Department of Housing and Urban Development ("HUD") was a department of the executive branch of the federal government.  The Federal Housing Administration (the "FHA") was a part of HUD's Office of Housing.  It provided mortgage insurance on loans made by FHA-approved lenders throughout the United States on mortgages on single family and multifamily homes.  FHA mortgage insurance provided lenders with protection against losses as the result of homeowners defaulting on their mortgage loans.  Loans were required to meet criteria established by FHA to qualify for insurance.

     e.   In or about 2009, BARNETT hired a contracting firm to be the general contractor on Vineyard Commons (the "General Contractor").  In or about 2009, the General Contractor entered into contracts with a subsidiary of the Lumber Company to be a sub-contractor on Vineyard Commons responsible for framing and rough carpentry.

2

f.   In or about 2009, a private lender (the "Mortgagor"), located in Washington, D.C., agreed to provide financing to Vineyard Commons, which financing would be insured by HUD/FHA.  The Mortgagor and the borrower agreed that the proceeds would be disbursed incrementally after the borrower submitted draw requests based upon its completion of phases of the project.  The Mortgagor was, at all relevant times, a financial institution, as that term is defined in Title 18, United States Code, Section 20, and a mortgage lending business, as that term is defined in Title 18, United States Code, Section 27.

### The $865,000 Kickback to Barnett

g.   On or about January 19, 2009, the Lumber Company provided the General Contractor a final bid to supply labor and materials for Vineyard Commons.  In or about March and April 2009, representatives of the Lumber Company and the General Contractor entered into an agreement by which the Lumber Company agreed to provide labor and materials in an amount approximately $865,000 greater than the final bid.  BARNETT, LEES, DICELLO, and representatives of the General Contractor intended that the approximately $865,000 difference between the final bid and the inflated contract price would be returned to BARNETT as a kickback, and further intended that the Mortgagor would

3

unwittingly finance the kickback by disbursing HUD/FHA-insured funds on the basis of inflated draw requests.

h.   In or about February 2009, the General Contractor agreed to provide BARNETT and Vineyard Commons with a $1 million letter of credit.  In order to obtain this letter of credit, BARNETT informally pledged the anticipated approximately $865,000 kickback to the General Contractor as collateral.

i.   In or about June 2009, BARNETT needed an additional letter of credit in order to secure HUD/FHA-insured financing from the Mortgagor.  The Lumber Company provided a $650,000 letter of credit to the Mortgagor.  BARNETT informally pledged the anticipated approximately $865,000 kickback to the Lumber Company as collateral.

j.   On or about July 2, 2009, BARNETT and others provided HUD with a written estimate of the cost of the Lumber Company's work (the "Final Framing Price") that exceeded the Lumber Company's actual price for labor and materials by approximately $865,000.

k.   Beginning in or about July 2009, and continuing until in or about January 2012, the General Contractor submitted contractor's requisitions (the "Contractor Requisitions") on forms provided by HUD to the Mortgagor, which the Mortgagor then sent to HUD.  These Contractor Requisitions included a certification by a representative of the General Contractor that

4

"all the information stated herein, as well as any information provided in the accompaniment herewith, is true and accurate." Each of these forms set forth the Final Framing Price as the actual cost of rough carpentry. Each month, the Mortgagor disbursed HUD-insured funds on the basis of the Contractor Requisitions.

        1.   In or about January 2010, LEES and DICELLO agreed with BARNETT to pay the General Contractor $200,000, which payment they understood would be guaranteed by part of BARNETT's interest in the approximately $865,000 difference between the contract price and the actual price for labor and materials provided by the Lumber Company. BARNETT sought this payment, and LEES and DICELLO agreed to make this payment, as a partial payment of BARNETT's obligation to the General Contractor. LEES and DICELLO arranged for the Lumber Company to send a $200,000 check to a company controlled by BARNETT that was not involved in the development of Vineyard Commons—which would then pass the money on to the General Contractor—in order to mask the transaction. On or about January 15, 2010, the Lumber Company issued a check for $200,000 to BARNETT's company and mailed it from Michigan to BARNETT in Dutchess County, New York.

        m.   On or about January 29, 2010, BARNETT sent to the General Contractor in Massachusetts a $200,000 check that he

5

drew on the account into which BARNETT had deposited the check
he received from the Lumber Company.

### Other Things of Value Sought by Barnett

n.    BARNETT used his position as the developer of
Vineyard Commons and his two additional residential projects in
Ulster County and Orange County to enrich himself by, among
other means, persuading contractors and subcontractors to
provide him with kickbacks and to invest money in Vineyard
Commons and the two additional projects.  BARNETT further
provided the Mortgagor with false and inflated invoices to cause
the Mortgagor to provide BARNETT with HUD-insured funds.

o.    From in or about 2008 through in or about 2010,
the General Contractor and multiple sub-contractors invested
money in Vineyard Commons at BARNETT's suggestion.  Many of them
did so, in part, because BARNETT led them to believe that doing
so would make it more likely that BARNETT would hire them on
either the Vineyard Commons project or his two future projects.

p.    In or about 2009, MICHAEL BARNETT, the defendant,
solicited sub-contractors and suppliers at Vineyard Commons to
provide labor and materials to construct a pool house at
BARNETT's residence.  Some of these sub-contractors and
suppliers agreed to do so, including the Lumber Company, through
DICELLO.  These sub-contractors and suppliers were either to
absorb the costs themselves or build the costs into their costs

6

related to Vineyard Commons or BARNETT's future projects.  Some
of them did so, in part, because BARNETT led them to believe
that doing so would make it more likely that BARNETT would hire
them on the future projects.

### STATUTORY ALLEGATIONS

2.    From at least in or about 2008 up to and including in
or about 2015, in the Southern District of New York and
elsewhere, MICHAEL BARNETT, ROBERT LEES, and KEVIN DICELLO, the
defendants, together with others known and unknown, knowingly
and willfully did conspire and agree together and with each
other to commit one and more offenses against the United States,
in violation of Title 18, United States Code, Sections 1001,
1014, 1341, 1343 and 1957 and Title 15, United States Code,
Sections 78m(b)(2)(A), 78m(b)(5) and 78ff, and Title 17, Code of
Federal Regulations, Section 240.13b2-1.

3.    It was a part and object of the conspiracy that
MICHAEL BARNETT, ROBERT LEES, and KEVIN DICELLO, the defendants,
together with others known and unknown, willfully and knowingly,
having devised and intending to devise a scheme and artifice to
defraud, and for obtaining money and property by means of false
and fraudulent pretenses, representations, and promises, would
and did transmit and cause to be transmitted by means of wire
communication in interstate commerce, writings, signals and
sounds for the purpose of executing such scheme and artifice,

7

thereby affecting a financial institution, in violation of Title 18, United States Code, Section 1343.

4.   It was a further part and object of the conspiracy that MICHAEL BARNETT, ROBERT LEES, and KEVIN DICELLO, the defendants, together with others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting to do so, would and did place in a post office and authorized depository for mail matter, matters and things to be sent and delivered by the Postal Service, and would and did deposit and cause to be deposited matters and things, to be sent and delivered by private and commercial interstate carriers, and would and did take and receive therefrom such matters and things and knowingly would and did cause to be delivered by mail and such carriers according to direction thereon, such matters and things, in violation of Title 18, United States Code, Section 1341.

5.   It was a further part and object of the conspiracy that MICHAEL BARNETT, ROBERT LEES, and KEVIN DICELLO, the defendants, together with others known and unknown, willfully and knowingly would and did make a false statement and report for the purpose of influencing in any way the action of the

Federal Housing Administration, and any division, officer, and
employee thereof, and a mortgage lending business, and any
person and entity that makes in whole and in part a federally
related mortgage loan as defined in section 3 of the Real Estate
Settlement Procedures Act of 1974, upon any application,
advance, commitment, loan, and insurance agreement and
application for insurance and a guarantee, and any change and
extension of the same, by renewal, deferment of action and
otherwise, and the acceptance, release, and substitution of
security therefor, in violation of Title 18, United States Code,
Section 1014.

6.    It was a further part and object of the conspiracy
that MICHAEL BARNETT, ROBERT LEES, and KEVIN DICELLO, the
defendants, together with others known and unknown, knowingly
and willfully would and did engage within the United States in
monetary transactions in and affecting interstate commerce in
criminal derived property of a value greater than $10,000, when
that property was in fact derived from specified unlawful
activity, in violation of Title 18, United States Code,
Section 1957.

7.    It was a further part and object of the conspiracy
that MICHAEL BARNETT, ROBERT LEES, and KEVIN DICELLO, the
defendants, together with others known and unknown, in a matter
within the jurisdiction of the executive branch of the

Government of the United States, knowingly and willfully would and did falsify, conceal, and cover up by trick, scheme, and device material facts, and make materially false, fictitious, and fraudulent statements and representations, and make and use false writings and documents knowing the same to contain materially false, fictitious and fraudulent statements and entries, in violation of Title 18, United States Code, Section 1001.

8.    It was a further a part and an object of the conspiracy that MICHAEL BARNETT, ROBERT LEES, and KEVIN DICELLO, the defendants, together with others known and unknown, knowingly and willfully would and did, directly and indirectly, falsify and cause to be falsified books, records, and accounts subject to Section 13(b)(2) of the Securities Exchange Act of 1934, namely books, records and accounts of the Lumber Company, an issuer with a class of securities registered pursuant to the Securities Exchange Act of 1934, which the Lumber Company was required to make and keep in reasonable detail, accurately and fairly reflecting the transactions and dispositions of the assets of the Lumber Company, in violation of Title 15, United States Code, Sections 78m(b)(2)((A), 78m(b)(2)(5) and 78ff, and Title 17, Code of Federal Regulations, Section 240.13b2-1.

## Overt Acts

9.    In furtherance of the conspiracy and to effect the illegal objects thereof, MICHAEL BARNETT, ROBERT LEES, and KEVIN DICELLO, the defendants, together with others known and unknown, committed the following overt acts in the Southern District of New York and elsewhere:

a.    On or about March 18, 2009, DICELLO sent a description of the Vineyard Commons project, including the approximately $865,000 kickback to be paid to BARNETT, to LEES in an email.

b.    On or about March 30 2009 DICELLO proposed to LEES in an email the manner by which the approximately $865,000 kickback would be paid.

c.    On or about September 14, 2009, BARNETT faxed false and inflated invoices to the Mortgagor.

d.    On or about October 4, 2009, BARNETT faxed false and inflated invoices to the Mortgagor.

e.    On or about October 27, 2009, BARNETT faxed inflated invoices to the Mortgagor.

f.    On or about July 2, 2009, BARNETT executed a "Contractor's and/or Mortgagor's Cost Breakdown" that set forth the Final Framing Price as the estimated cost of the Lumber Company's work.

g.   On or about July 16, 2009, a representative of the General Contractor executed a Contract Requisition containing a false statement of the price of the rough carpentry for the Vineyard Commons development.

h.   On or about August 20, 2009, a representative of the General Contractor executed a Contractor Requisition containing a false statement of the price of the rough carpentry for the Vineyard Commons development.

i.   On or about September 16, 2009, a representative of the General Contractor executed a Contractor Requisition containing a false statement of the price of the rough carpentry for the Vineyard Commons development.

j.   On or about October 21, 2009, a representative of the General Contractor executed a Contractor Requisition containing a false statement of the price of the rough carpentry for the Vineyard Commons development.

k.   On or about November 18, 2009, a representative of the General Contractor executed a Contractor Requisition containing a false statement of the price of the rough carpentry for the Vineyard Commons development.

l.   On or about December 4, 2009, DICELLO told a representative of the General Contractor in an email that neither he nor others at the Lumber Company were aware that

BARNETT had pledged the approximately $865,000 kickback both to the General Contractor and the Lumber Company.

   m. On or about December 16, 2009, a representative of the General Contractor executed a Contractor Requisition containing a false statement of the price of the rough carpentry for the Vineyard Commons development.

   n. On or about January 5, 2010, DICELLO told BARNETT in an email it would be preferable to have the $200,000 check made payable to another company controlled by BARNETT that was not involved in Vineyard Commons in order to mask the transaction.

   o. On or about January 13, 2010, DICELLO sought LEES' approval to pay BARNETT the partial $200,000 kickback.

   p. On or about January 14, 2010, LEES approved the payment of the partial $200,000 kickback to Barnett.

   q. On or about January 15, 2010, a representative of the Lumber Company caused a $200,000 check to be sent to Barnett's company.

   r. On or about January 20, 2010, a representative of the General Contractor executed a Contractor Requisition containing a false statement of the price of the rough carpentry for the Vineyard Commons development.

   s. On or about January 29, 2010, BARNETT wrote a $200,000 check to the General Contractor.

t.   On or about February 17, 2010, a representative of the General Contractor executed a Contractor Requisition containing a false statement of the price of the rough carpentry for the Vineyard Commons development.

u.   On or about March 16, 2010, a representative of the General Contractor executed a Contractor Requisition containing a false statement of the price of the rough carpentry for the Vineyard Commons development.

(Title 18, United States Code, Section 371.)

### COUNTS TWO THROUGH THIRTEEN

(Wire Fraud)

The Grand Jury further charges:

10.   The allegations set forth in paragraph 1 are repeated and realleged herein.

11.   From at least in or about 2009 up to and including at least in or about 2010, in the Southern District of New York and elsewhere, MICHAEL BARNETT, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire communication in interstate commerce, writings, signals and sounds for the purpose of executing such scheme and artifice, and aided and abetted the same, thereby affecting a financial

institution, to wit, BARNETT (i) sent false and inflated
invoices to the Mortgagor in order to induce the Mortgagor to
disburse funds to which BARNETT and the Vineyard Commons
development were not entitled; and (ii) aided and abetted
representatives of the General Contractor in providing false
information to the Mortgagor in order to induce the Mortgagor to
disburse funds to which BARNETT, the General Contractor, and the
Vineyard Commons development were not entitled.  Specifically,
on or about the dates set forth below, BARNETT caused to
following wire transmissions in furtherance of the scheme to
defraud set forth herein:

| Count | Approximate Date | Wire |
|-------|------------------|------|
| 2 | September 14, 2009 | Fax of draw request and false and inflated invoices from BARNETT to the Mortgagor |
| 3 | October 4, 2009 | Fax of draw request and false and inflated invoices from BARNETT to the Mortgagor |
| 4 | October 27, 2009 | Fax of draw request and inflated invoices from BARNETT to the Mortgagor |
| 5 | July 27, 2009 | Wire transfer of money from the Mortgagor to the General Contractor |

| Count | Approximate Date | Wire |
|---|---|---|
| 6 | August 28, 2009 | Wire transfer of money from the Mortgagor to the General Contractor |
| 7 | September 23, 2009 | Wire transfer of money from the Mortgagor to the General Contractor |
| 8 | October 28, 2009 | Wire transfer of money from the Mortgagor to the General Contractor |
| 9 | November 30, 2009 | Wire transfer of money from the Mortgagor to the General Contractor |
| 10 | December 28, 2009 | Wire transfer of money from the Mortgagor to the General Contractor |
| 11 | January 26, 2010 | Wire transfer of money from the Mortgagor to the General Contractor |
| 12 | February 25, 2010 | Wire transfer of money from the Mortgagor to the General Contractor |
| 13 | March 26, 2010 | Wire transfer of money from the Mortgagor to the General Contractor |

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT FOURTEEN

(Mail Fraud)

The Grand Jury further charges:

12.   The allegations set forth in paragraph 1 are repeated and realleged herein.

13.   On or about January 15, 2010, in the Southern District of New York and elsewhere, MICHAEL BARNETT, ROBERT LEES, and KEVIN DICELLO, the defendants, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting to do so, did place in a post office and authorized depository for mail matter, matters and things to be sent and delivered by the Postal Service, and did deposit and cause to be deposited matters and things, to be sent and delivered by private and commercial interstate carriers, and did take and receive therefrom such matters and things and knowingly did cause to be delivered by mail and such carriers according to direction thereon, such matters and things, and aided and abetted the same, to wit, BARNETT, LEES and DICELLO caused, and aided and abetted others in causing, the Lumber Company to mail a $200,000 check from Michigan to Dutchess County, New York.

(Title 18, United States Code, Sections 1341 and 2.)

17

## COUNTS FIFTEEN THROUGH TWENTY-SEVEN

(False Statements in Loan and Credit Applications)

The Grand Jury further charges:

14. The allegations set forth in paragraph 1 are repeated and realleged herein.

15. From at least in or about 2009, up to and including at least in or about 2010, in the Southern District of New York and elsewhere, MICHAEL BARNETT, ROBERT LEES, and KEVIN DICELLO, the defendants, willfully and knowingly made a false statement and report for the purpose of influencing in any way the action of the Federal Housing Administration, and any division, officer, and employee thereof, and a mortgage lending business, and any person and entity that makes in whole and in part a federally related mortgage loan as defined in section 3 of the Real Estate Settlement Procedures Act of 1974, upon any application, advance, commitment, loan, and insurance agreement and application for insurance and a guarantee, and any change and extension of the same, by renewal, deferment of action and otherwise, and the acceptance, release, and substitution of security therefor, and aided and abetted the same, to wit,

(i) BARNETT sent false and inflated invoices to the Mortgagor in order to induce the Mortgagor to disburse funds to which BARNETT and the Vineyard Commons development were not entitled;

(ii) BARNETT, LEES, and DICELLO executed a "Contractor's and/or

Mortgagor's Cost Breakdown" that set forth Final Framing Price
as the estimated cost of the Lumber Company's work and aided and
abetted the same; and (iii) BARNETT aided and abetted
representatives of the General Contractor in providing false
information to the Mortgagor in order to induce the Mortgagor to
disburse funds to which BARNETT, the General Contractor, and the
Vineyard Commons development were not entitled.  Specifically,
on or about the dates set forth below, BARNETT caused to be made
the false statements set forth herein:

| Count | Defendant(s) | Approximate Date | False Statement |
|-------|-------------|------------------|-----------------|
| 15 | BARNETT | September 14, 2009 | False and inflated dollar amounts in invoices BARNETT faxed to the Mortgagor |
| 16 | BARNETT | October 4, 2009 | False and inflated dollar amounts in invoices BARNETT faxed to the Mortgagor |
| 17 | BARNETT | October 27, 2009 | False and inflated dollar amounts in invoices BARNETT faxed to the Mortgagor |

| 18 | BARNETT LEES DICELLO | July 2, 2009 | The Final Framing Price, falsely set forth as the estimated price of the Lumber Company's work, in a "Contractor's and/or Mortgagor's Cost Breakdown" executed by BARNETT |
| 19 | BARNETT | July 16, 2009 | False statement of price of rough carpentry in a Contractor Requisition submitted to the Mortgagor |
| 20 | BARNETT | August 20, 2009 | False statement of price of rough carpentry in a Contractor Requisition submitted to the Mortgagor |
| 21 | BARNETT | September 16, 2009 | False statement of price of rough carpentry in a Contractor Requisition submitted to the Mortgagor |
| 22 | BARNETT | October 21, 2009 | False statement of price of rough carpentry in a Contractor Requisition submitted to the Mortgagor |

| 23 | BARNETT | November 18, 2009 | False statement of price of rough carpentry in a Contractor Requisition submitted to the Mortgagor |
| 24 | BARNETT | December 16, 2009 | False statement of price of rough carpentry in a Contractor Requisition submitted to the Mortgagor |
| 25 | BARNETT | January 20, 2010 | False statement of price of rough carpentry in a Contractor Requisition submitted to the Mortgagor |
| 26 | BARNETT | February 17, 2010 | False statement of price of rough carpentry in a Contractor Requisition submitted to the Mortgagor |
| 27 | BARNETT | March 16, 2010 | False statement of price of rough carpentry in a Contractor Requisition submitted to the Mortgagor |

(Title 18, United States Code, Sections 1014 and 2.)

## COUNT TWENTY-EIGHT

(Engaging in Monetary Transactions in Property Derived From Specified Unlawful Activity)

The Grand Jury further charges:

16.   The allegations set forth in paragraph 1 are repeated and realleged herein.

17.   From at least on or about January 15, 2010, up to and including at least on or about January 29, 2010, in the Southern District of New York and elsewhere, MICHAEL BARNETT, ROBERT LEES, and KEVIN DICELLO, the defendants, knowingly engaged within the United States in monetary transactions in and affecting interstate commerce in criminally derived property of a value greater than $10,000, that was derived from specified unlawful activity, and aided and abetted the same, to wit, BARNETT, LEES and DICELLO committed mail fraud by causing the Lumber Company to mail a $200,000 check from Michigan to Dutchess County, New York, and then laundered that money by writing a $200,000 check to the General Contractor.

(Title 18, United States Code, Sections 1957 and 2).

## COUNTS TWENTY-NINE THROUGH THIRTY-ONE

(False Statements)

The Grand Jury further charges:

18.   The allegations set forth in paragraph 1 are repeated and realleged herein.

22

19.   In or about 2010, in the Southern District of New York and elsewhere, MICHAEL BARNETT, the defendant, in a matter within the jurisdiction of the executive branch of the Government of the United States, knowingly and willfully falsified, concealed, and covered up by trick, scheme, and device material facts, and made materially false, fictitious, and fraudulent statements and representations, and made and used false writings and documents knowing the same to contain materially false, fictitious and fraudulent statements and entries, and aided and abetted the same, to wit, BARNETT aided and abetted representatives of the General Contractor in providing false information, entered on HUD forms, to the Mortgagor, which statements were then forwarded to HUD, in order to induce the Mortgagor to disburse funds to which BARNETT, the General Contractor, and the Vineyard Commons development were not entitled.   Specifically, on or about the dates set forth below, BARNETT caused to be made the false statements set forth herein:

| Count | Approximate Date | False Statement |
|-------|------------------|-----------------|
| 29 | January 20, 2010 | False statement of price of rough carpentry in a Contractor Requisition |

| Count | Approximate Date | False Statement |
|-------|------------------|-----------------|
| 30 | February 17, 2010 | False statement of price of rough carpentry in a Contractor Requisition |
| 31 | March 16, 2010 | False statement of price of rough carpentry in a Contractor Requisition |

(Title 18, United States Code, Sections 1001(a) and 2.)

## FIRST FORFEITURE ALLEGATION

20.  As a result of committing the offense charged in Count One of this Indictment, MICHAEL BARNETT, ROBERT LEES, and KEVIN DICELLO, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offense charged in Count One of this Indictment, including but not limited to the following:

a.   All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments, and easements, located at 10 Wintergreen Place, Hopewell Junction, New York 12533.

## SECOND FORFEITURE ALLEGATION

21.  As a result of committing the offenses charged in Count Twenty-Eight of this Indictment, MICHAEL BARNETT, ROBERT

LEES, and KEVIN DICELLO, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of one or more of the offenses charged in Counts Fourteen and Twenty-Eight of this Indictment.

### THIRD FORFEITURE ALLEGATION

22.  As a result of committing the offenses charged in Counts Two through Twenty-Seven of this Indictment, MICHAEL BARNETT, the defendant, and as a result of committing the offense charged in Counts Fourteen and Eighteen of this Indictment, ROBERT LEES and KEVIN DICELLO, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), any and all property constituting, or derived from, proceeds obtained directly or indirectly, as the result of the commission of one or more of the offenses charged in Counts Two through Twenty-Seven of this Indictment for BARNETT and Counts Fourteen and Eighteen of this Indictment for LEES and DICELLO.

### Substitute Assets Provision

23.  If any of the above-described forfeitable property, as a result of any act or omission of MICHAEL BARNETT, the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to 18 U.S.C. §§ 981 and 982, 21 U.S.C. § 853(p), and 28 U.S.C. § 2461, to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property, including but not limited to all that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments, and easements, located at 6 Heather Court, Fishkill, New York 12524.

    (Title 18, United States Code, Sections 981 and 982;
     Title 21, United States Code, Section 853; and
     Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
PREET BHARARA
United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

MICHAEL BARNETT,
ROBERT LEES and
KEVIN DICELLO

Defendants.

## INDICTMENT

15 Cr. 17 (KMK)(S1)

(18 U.S.C. §§ 371, 1001(a), 1014, 1341,
1343, 1957, and 2 and 15 U.S.C. §§
78m(b)(2)(A), 78m(b)(5) and 78ff and 17
C.F.R. § 240.13b2-1.)

PREET BHARARA
United States Attorney.

A TRUE BILL

Foreperson.