**MANDATE**

17-229-cr
*United States v. Lees*

7:15-cr-00017-KMK-2

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of March, two thousand eighteen.

PRESENT: GUIDO CALABRESI,
DENNY CHIN,
SUSAN L. CARNEY,
*Circuit Judges.*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: April 3, 2018

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,
    *Appellee,*

v.  17-229-cr

MICHAEL BARNETT and KEVIN DiCELLO,
    *Defendants,*

v.

ROBERT LEES,
    *Defendant-Appellant.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**MANDATE ISSUED ON 4/03/2018**

| | |
|---|---|
| FOR APPELLEE: | WON S. SHIN, Assistant United States Attorney (Michael D. Maimin, Anna M. Skotko, Assistant United States Attorneys, *on the brief*), *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, New York. |
| FOR DEFENDANT-APPELLANT: | ERIC M. CREIZMAN, Creizman PLLC, New York, New York. |

Appeal from the United States District Court for the Southern District of New York (Karas, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-appellant Robert Lees was convicted, after a jury trial, of conspiracy and other charges related to his involvement in a housing development kickback scheme. Lees now appeals from the district court's judgment of conviction, entered January 9, 2017, sentencing him to 50 months' imprisonment and three years' supervised release. On appeal, Lees argues that (1) the Government violated its disclosure obligations by failing to obtain or produce certain interview memoranda; (2) the district court erred in admitting certain e-mails as evidence at trial; and (3) his sentence was procedurally and substantively unreasonable. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

Lees served as a regional vice president and then divisional president of Universal Forest Products ("UFP"), a publicly traded company that manufactured

housing supplies and building materials and owned various consumer products companies. In 2009, UFP's subsidiary, Shawnlee Construction, was hired by a general contractor, JK Scanlan, to provide carpentry and framing work for Vineyard Commons, a housing development project in Ulster County, New York. Kevin DiCello, a Vice President of Operations at UFP, was Shawnlee's/UFC's primary contact for the project. DiCello directly reported to Lees.

The kickback scheme (the "Shady Deal")[1] operated as follows: Shawnlee inflated its bid for carpentry and framing work, and that inflated contract price was then submitted to the Federal Housing Administration (the "FHA"), the United States Department of Housing and Urban Development ("HUD"), and Love Funding, a private lender, as part of an application for a HUD-insured mortgage loan. When Love Funding paid the full contract price, Shawnlee/UFP and JK Scanlan then kicked the inflated funds -- approximately $865,000 -- back to Michael Barnett, the project developer.

The evidence at trial showed that Lees participated in the scheme by, among other things, approving UFP's participation in the Shady Deal, directing DiCello to structure the Shady Deal so as to avoid scrutiny by tax authorities, and agreeing with

---

[1] Both parties refer to the kickback scheme as the "Shady Deal," and thus we adopt that term of reference in this appeal.

others to secure additional capital and conceal payments related to the Shady Deal by transferring funds through unrelated entities.

On May 20, 2016, Lees was convicted, after a jury trial, of conspiracy, mail fraud, making false statements in loan and credit applications, and engaging in monetary transactions in property derived from specified unlawful activity.

Lees appeared for sentencing on December 15, 2016. Lees had a total offense level of 33, a criminal history category of I, and an applicable Guidelines range of 135 to 168 months' imprisonment. At sentencing, however, Lees objected to the application of three sentencing enhancements in his Guidelines calculation: (1) an aggravating role enhancement because Lees was a "manager or supervisor" and the scheme involved at least five participants, U.S.S.G. § 3B1.1(b); (2) a securities violation enhancement based on Lees's status as a divisional president of UFP, U.S.S.G. § 2B1.1(b)(19)(A)(i); and (3) an obstruction of justice enhancement based on the district court's finding that Lees had committed perjury at trial, U.S.S.G. § 3C1.1. The district court overruled Lees's objections to the enhancements, and concluded that although there was some "overlap" between the aggravating role and securities violation enhancements, both were "appropriate" in Lees's case. App. 1378-79.

The district court then sentenced Lees to 50 months' imprisonment and three years' supervised release.[2] In imposing the below-Guidelines sentence, the district court stated that it had considered numerous factors, including that Lees had "led an exemplary life," App. 1373, the sentence would significantly impact his family, Lees did not profit from the scheme, and Lees posed no risk of recidivism. The district court also acknowledged that in applying the role and securities violation enhancements, "there[ ] [was] a little bit of double counting," App. 1339, and the "overlap" between the sentencing enhancements "tip[ped] the scales a little bit higher than they should be," App. 1378-79.

### 1. Disclosure Obligations

Lees first argues that the Government violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and the Jencks Act, 18 U.S.C. § 3500, because it failed to produce or obtain interview memoranda of UFP's general counsel, Matt Missad, that were allegedly compiled by UFP's outside counsel during an internal investigation of the Shady Deal. Lees claims that the interview memoranda could have contained exculpatory statements about his involvement in the Shady Deal or provided impeachment material for trial witnesses.

---

[2] The court also imposed $865,000 in restitution, $865,00 in forfeiture, and a $400 mandatory special assessment.

Where, as here, a *Brady*, *Giglio*, or Jencks Act claim is raised in a motion for a new trial, the denial of that motion is reviewed for abuse of discretion. *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 144 (2d Cir. 2008).[3]

We are not persuaded that the Government violated its disclosure obligations. It is unclear from the record whether UFP's counsel actually interviewed Missad. Assuming Missad was interviewed, the Government did not possess those interview notes or memoranda, and was therefore not required to produce them. *See, e.g.,* 18 U.S.C. § 3500(b) (Jencks Act obligation applies to prior related statements of a witness "*in the possession of the United States*") (emphasis added); *United States v. Coppa*, 267 F.3d 132, 140 (2d Cir. 2001) (prosecutors have a duty to "actively seek *Brady* material [for disclosure to the defendant] . . . in the files of *related agencies* reasonably expected to have possession of such information" (emphasis added)). We therefore agree with the district court that "there really isn't any basis on the facts of this case or any controlling legal authority that suggests [ ] that the government was in possession or in custody or control of the [UFP] documents." App. 1318. Moreover, Lees's counsel conceded at oral

---

[3] Lees did not raise his *Brady*, *Giglio*, and Jencks Act arguments in his motion for a new trial. Instead, he argued that his counsel was ineffective for failing to *request* Missad interview materials. Where a defendant fails properly to object before the district court, on appeal his claim is reviewed only for plain error. *See, e.g.*, *United States v. Ubiera*, 486 F.3d 71, 74 (2d Cir. 2007) (reviewing claim for plain error where defendant objected but "raise[d] a substantially different argument on appeal"). We need not decide which standard applies, however, because even under "abuse of discretion" review, we agree that the Government was not obligated to obtain or produce the interview memoranda.

- 6 -

argument that the Government was not in actual or constructive possession of the documents he predicates his claims on. This concession ends the discussion.

Lees also cites no authority that supports his assertion that the Government was required to obtain the interview memoranda by asking UFP's outside counsel to waive its attorney-client privilege over documents from UFP's internal investigation. *See, e.g.*, U.S. Attorneys' Manual 9-28.710 (explaining that "a corporation remains free to convey . . . attorney-client communications or work product -- if and only if the corporation voluntarily chooses to do so -- [but] prosecutors should not ask for such waivers and are directed not to do so").

2. **Evidence Admitted at Trial**

Second, Lees argues that the district court improperly admitted two e-mails as "co-conspirator statements." He specifically argues that the e-mails were inadmissible as co-conspirator statements because (1) there was no "illicit scheme" to which Lees and Missad agreed, and (2) even if Missad was aware of the Shady Deal, he did not participate in the conspiracy. Def.-Appellant's Br. 29 (emphasis omitted).

The admission of co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E) is ordinarily reviewed for "clear error," but when a defendant does not object at trial, this Court's review "is limited to plain error." *United States v. Coppola*, 671 F.3d 220, 246 & n.20 (2d Cir. 2012).

We are not persuaded that the district court plainly erred by admitting the e-mails. The record sufficiently establishes that Missad was a co-conspirator and knew about, participated in, and conspired in furthering the Shady Deal by, among other things, actively working to move a letter of credit to Barnett and ensuring the letter reflected the fraudulently inflated contract price. *See United States v. Heinemann*, 801 F.2d 86, 92 n.2 (2d Cir. 1986) ("There is, of course, no requirement that each co-conspirator participate in every phase of an evolving conspiracy, as long as each was aware that the conspiracy did not begin and end with his own activities.").

3.  **Procedural and Substantive Reasonableness**

Lees also argues that his sentence was procedurally unreasonable. He asserts that (1) the three-level role enhancement should not have been applied because he was not a manager or supervisor of the criminal scheme; and (2) the district court's application of the role enhancement and the securities violation enhancement constituted impermissible double-counting. He further argues that his sentence is substantively unreasonable because there was an unwarranted disparity between his 50-month sentence and Barnett's 37-month sentence and DiCello's sentence of time served.

None of these arguments is persuasive. First, that DiCello took independent actions in development and furtherance of the scheme does not mean Lees was not a manager or supervisor for purposes of applying the enhancement. *United*

- 8 -

*States v. Burgos*, 324 F.3d 88, 92 (2d Cir. 2003) (manager or supervisor enhancement requires only that the defendant exercised "some degree of control over others involved in the commission of the offense," and "[i]t is enough to manage or supervise a single other participant" (internal quotation marks omitted)). DiCello testified that the scheme was contingent on Lees's approval, and as the district court acknowledged, "it's a fair inference from the record that if Mr. Lees had said no, this fraud wouldn't have happened." App. 1383. The district court also correctly rejected Lees's assertion that he provided only a "one-off" approval, as the evidence at trial demonstrated that Lees engaged in ongoing supervision, e.g., by directing DiCello to structure the deal so as to avoid the scrutiny of tax authorities.

Second, we are not persuaded that the district court engaged in impermissible double-counting by applying both the role enhancement and the securities violation enhancement. The two enhancements address different harms and are sufficiently discrete. *See United States v. Maloney*, 406 F.3d 149, 153 (2d Cir. 2005) ("[D]ouble counting is permissible in calculating a Guidelines sentence where . . . each of the multiple Guidelines sections applicable to a single act serves a distinct purpose or represents a distinct harm."). Furthermore, the two enhancements involve "different facets" of Lees's conduct. *United States v. Sabhani*, 599 F.3d 215, 251 (2d Cir. 2010). The securities violation enhancement was based on Lees's involvement in a securities law violation and his status as an officer of UFP. *See* U.S.S.G. § 2B1.1(b)(19)(A)(i). The role

- 9 -

enhancement was based on Lees's involvement in a scheme involving at least five participants, and his management and supervision of DiCello.  *See* U.S.S.G. § 3B1.1(b).

Third, that Lees's co-conspirators received lower sentences does not render Lees's sentence substantively unreasonable.  *See United States v. Wills*, 476 F.3d 103, 110 (2d Cir. 2007) (Section 3553(a) "does not *require* district courts to consider sentencing disparity among co-defendants," although disparities may be considered) (emphasis added)).  Regardless, Lees, Barnett, and DiCello were not similarly situated.  Lees had a higher applicable Guidelines range than Barnett, and unlike DiCello, he did not cooperate with the Government.  Moreover, Lees served as an officer of a publicly traded company and had heightened fiduciary duties, failed to accept responsibility, and committed perjury at trial.

Lastly, we are not persuaded that Lees's sentence was otherwise substantively unreasonable.  His sentence was well below his Guidelines range of 135 to 168 months.  *See United States v. Perez-Frias*, 636 F.3d 39, 43 (2d Cir. 2011) (per curiam) (explaining that it is "difficult to find that a below-Guidelines sentence is unreasonable" because "[i]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable").  Furthermore, the district court adequately explained that a term of imprisonment was necessary and consistent with the § 3553(a) sentencing factors in light of the harms

resulting from the scheme, Lees's perjury at trial, and the need for general deterrence.

We have considered Lees's remaining arguments and find them to be without merit. For the reasons set forth above, we **AFFIRM** the district court's judgment.

                                              FOR THE COURT:
                                              Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

- 11 -